IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS   **FILED**
EASTERN DIVISION

MAR 4 - 2005

DENNIS SPERANDEO,

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

                Plaintiff,

Case No. 04 C 3214

v.

LORILLARD TOBACCO CO. &
CONTINENTAL CASUALTY COMPANY
a/k/a CNA,

Hon. Harry D. Leinenweber

                Defendants.

## MEMORANDUM OPINION AND ORDER

This case arises from Continental Casualty Co. a/k/a CNA's (hereinafter, "CNA") denial of Plaintiff Dennis Sperandeo's application for disability benefits under a group employee benefit plan. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, Plaintiff's motion is **denied** and Defendants' motion is **granted**.

### I. BACKGROUND

Sperandeo was employed as a sales representative by Defendant Lorillard Tobacco Company (hereinafter, "Lorillard") until May 7, 2001, when he was injured in an automobile accident. Sperandeo went to the emergency room and was diagnosed with a concussion, leg injuries, and a left shoulder strain, but was discharged the same day. He also complained of dizziness and imbalance. Sperandeo stopped working on the date of the accident through January 2, 2002, and then returned to work for two days. Sperandeo ceased

working on January 4, 2002. CNA provided benefits to Sperandeo from November 3, 2001 (following the 180-day Elimination Period from the accident) until January 2, 2002, when Sperandeo returned to work.

### A. Sperandeo's Application

On July 10, 2002, Sperandeo submitted a claim to CNA for disability benefits dating back to January 2, 2002. He stated that his "shoulder, back, neck, head and ear" injuries prevented him from returning to his job. (AR 470). In support of his original application and subsequent appeal, Sperandeo submitted medical evaluations from multiple doctors, operative reports, MRIs, x-rays, emergency room reports, physical therapy notes, and a Behind the Wheel Evaluation. In total, fifteen doctors examined Sperandeo, including orthopaedic surgeons who evaluated his shoulder pain (Dr. Zoellick and Dr. Visotsky) and several doctors who evaluated his neurologic-related issues (Dr. Randolph (neuropsychologist), Dr. Moore (otology-neurotology), Dr. Glista (neurologist), Dr. Wolf (neurologist), Dr. Fiducia (psychologist), and Dr. Hain (otoneurologist)). Sperandeo's internal medicine physician, Dr. Lewis, also submitted a letter on his behalf. See Section II.C., *infra*, for a description of the pertinent medical evidence.

### B. The Plan

The Plan is a group employees benefit plan as defined under 29 U.S.C. § 1002(1). Under the Plan, long term disability benefits

accrue to insured participants who are "disabled." During the 180-day Elimination Period and the 24 months following an injury, a participant is "disabled" if the participant lacks gainful employment and has a sickness or injury that "causes physical or mental impairment to such a degree of severity that *You are . . . continuously unable to perform the Material and Substantial duties of Your Regular Occupation*." (POL 013). After 24 months of benefits payments, the Plan defines "disability" as having a "physical or mental impairment to such a degree of severity that *You are . . . continuously unable to engage in any occupation for which You are or become qualified by education, training or experience*." (*Id.*).

To qualify for benefits under the Plan, a participant must submit "objective medical findings" that demonstrate the severity of the participant's condition, including "tests, procedures, or clinical examinations standardly accepted in the practice of medicine." (POL 020).

### C. CNA's Denial of Sperandeo's Application

On October 4, 2002, CNA denied Sperandeo's claim. (AR 187-188). In its letter, CNA stated that it performed an exhaustive review of the medical information supplied by Sperandeo – Dr. Fiducia (Psychologist), Dr. Glista (Neurologist), Dr. Zoellick (Orthopaedist), Dr. Moore (Neurologist), Dr. Lewis (Internal Medicine), and Dr. Randolph (Neuropsychologist). CNA determined

that because multiple physicians concluded "that [Sperandeo's] complaints of cognitive impairment and symptoms of imbalance and memory loss [were] highly exaggerated and not consistent with the clinical findings regarding the extent of [his injuries]," insufficient evidence existed to show that he was unable to perform the duties of his occupation. (AR 188). CNA rejected Sperandeo's claim.

Sperandeo appealed. After further review, CNA denied Sperandeo's appeal on January 28, 2003. (AR 005-006). In its denial, CNA noted that it reviewed medical information from fifteen doctors, operative reports, MRI's, x-rays, emergency room reports, physical therapy notes, Behind the Wheel Evaluation, and various other medical evidence and self reported symptoms. (AR 005). The Appeal Committee found that the medical evidence provided "little to no explanation" for his continued self-reported symptoms, and concluded there was:

> minimal findings on physical/clinical examinations(s) and testing results that are not commensurate with any condition(s) that would reasonably be expected to cause functional impairment and that would *continuously* preclude you from your work activity from a physical and/or mental/nervous standpoint and therefore you would not continue to meet the definition of **"Total Disability"** as defined in the terms of the contract.
>
> Although you continue to seek treatment for your condition, a diagnosis and continued medical treatment in and of themselves further do not document **"Total Disability"**. . . in the

>absence of medical findings to support a condition exists that would render you *continuously* unable to perform your regular work activity. (AR 006).

The Committee also found that the variation in diagnosis and evaluation between the medical professionals further compromised the validity of Sperandeo's complaint.

## II. **DISCUSSION**

Both parties moved for summary judgment. The summary judgment standard is well-established and is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### A. Proper Party

Sperandeo named both CNA and Lorillard as Defendants. It is well-settled under Seventh Circuit law that in actions to recover benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), "only the plan as an entity is the proper party to sue." *Witowski v. Tetra Tech, Inc.*, 38 F.Supp.2d 640, 644 (N.D. Ill. 1998), citing *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491 (7th Cir. 1996). Thus, Lorillard, as Sperandeo's employer, is not the proper party to this action. Further, Sperandeo acknowledges that Lorillard is not the proper party. (Pl. Resp. Br. at 11).

Accordingly, Defendants' Motion for Summary Judgment as to Lorillard is **GRANTED**.

### B. Standard of Review

Section 1132(a)(1)(B) of ERISA authorizes courts to review a plan administrator's eligibility decision regarding an employee benefit plan. The parties disagree on the proper standard of review for the denial of benefits in this case. CNA argues that the proper standard is arbitrary and capricious, while Sperandeo contends that it is *de novo*.

The Supreme Court has previously set forth the basic rule for reviewing a denial of benefits under ERISA. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court explained that the standard is *de novo* review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." When a benefit plan affords discretionary power to the plan administrator, the proper standard is arbitrary and capricious. *See Wilczynski v. Kemper Nat'l Ins. Cos.*, 178 F.3d 933, 934 (7th Cir. 1999). However, if a plan's administrator intends to exercise discretionary power, the employees must be told in a clear manner. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332-33 (7th Cir. 2000).

The Plan at issue here contains no language indicating that CNA holds discretionary power to determine eligibility for

benefits. However, the Summary Plan Description and Certificate of Insurance (the "Certificate") provide that CNA has discretionary power to determine benefits eligibility.

The Summary Plan Description provides that CNA maintains discretionary authority to "determine [the insured's] eligibility for and entitlement to benefits under the plan to interpret the terms and provisions of any insurance policy issued in connection with the Plan." (POL 026). It also clearly states that it "does not constitute a part of the Plan, nor of any insurance policy issued in connection with it."

An attachment to the Certificate states that the "plan administrator and other plan fiduciaries have discretionary authority to determine *Your* eligibility for and entitlement to benefits under the Policy." It also provides that the "plan has delegated sole discretionary authority to Continental Casualty Company to determine Your eligibility for benefits and to interpret the terms and provisions of the *Policy*." (POL 025). The Certificate also expressly states that "it is not the policy. It is merely evidence of insurance provided under the Policy."

CNA contends that the discretionary language in the Certificate is either part of the Plan itself, or alternately is incorporated into the Plan. Sperandeo responds that the discretionary language at issue does not grant discretionary authority because it is not contained in the Plan.

CNA's arguments fail. The title page of the Certificate explains that the "following pages provide a complete description of the provisions of *your* certificate" and the "discretionary authority" provision appears on a page following the Certificate title page. Thus, the provision is part of the Certificate, and not the Plan itself.

As to the incorporation argument, CNA correctly asserts that the Plan states that it will "deliver certificates of insurance to the Employer for issuance to each *Insured Employee*. The Certificates will describe the benefits, to whom they are payable, the policy limitations and where the policy may be inspected." (POL 008). However, this language does not incorporate the Certificate into the policy, but rather describes the contents of the Certificate.

In *Wolff v. Continental Cas. Co.*, 2004 WL 2191579(N.D. Ill. 2004), the court quickly dismissed the argument that the policy's language incorporated the certificate. The Court explained that the certificate "itself clearly state[d] that it is 'not the policy. It is merely evidence of insurance provided under the policy.'" See *id* at *10. The Court agrees and concludes that the Plan does not incorporate the Certificate.

The central issue here is thus whether the Certificate itself can properly grant discretionary authority to the plan administrator when the Plan is silent. CNA, citing *Crespo v. Unum*

*Life Ins. Co. of Amer.*, 294 F.Supp.2d 980 (N.D. Ill. 2003), argues that discretionary language may control. In *Crespo*, the Court held that the policy granted the plan administrator discretionary authority because the "combined language of the Certificate Section and the ERISA section of the Policy use[d] the term 'discretion,' or a variation thereof, five times and clearly inform[ed] the insured of Unum's discretion." *Id.* at 990. Further, the policy also included an ERISA section that "expressly vest[ed] in Unum the broadest discretion permissible under ERISA." *Id.*

This Plan is distinguishable because the Certificate expressly states that it is "not the policy. It is merely evidence of insurance provided by the policy." Further, the Plan is silent and the ERISA section clearly states that it "does not constitute a part of the Plan, nor any insurance policy issued in connection with it." (POL 026). In a similar case, this District concluded that *de novo* review was appropriate for the denial of benefits. *See Mullally v. Boise Cascade Corp. Long Term Disability*, 2005 WL 66070 (N.D. Ill. 2005). In *Mullally*, the certificate contained a discretionary statement and also specified that "it was not the policy and is merely evidence of the policy." *Id.* at *5. The court held that "based upon the inconsistency between the clear and specific limiting language in the Certificate and the language in the Policy regarding the Certificate, it cannot be said that the

insured has been advised with the requisite clarity that the employer and insurer have discretion to deny claims." *Id.*

The use of discretionary authority must be clear because "employees are entitled to know what they're getting into, and so if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly." *Herzberger*, 205 F.3d at 333. Here, it cannot be said that the participants have been advised with requisite clarity that Lorillard and CNA have the discretion to deny claims. As a result, the Court concludes that *de novo* review is appropriate.

## C. Denial of Benefits

*De novo* review requires that the court look beyond the reasonableness of CNA's decision to determine whether CNA's decision to deny Sperandeo's application for disability benefits was correct. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 540 (7th Cir. 2000). To qualify for benefits, a participant must have a "physical or mental impairment to such a degree of severity that [he is] continuously unable to perform the Material and Substantial Duties" of his job, which is defined as "necessary functions . . . which cannot be reasonably omitted or altered." (POL 024). Further, the participant must provide "objective medical evidence" supporting his condition.

In evaluating the disability application, the Court first considers the Physical Demands Analysis (the "PDA") that Lorillard

completed regarding Sperandeo's sales representative position. (AR 481-482). According to the PDA, during a typical day, a sales representative spends a substantial portion of the day driving and standing. He also sits for approximately 2 hours and walks for about 1 hour. (AR 481). A sales representative lifts cases of cigarettes from floor to ceiling that typically weigh 21 pounds, with a maximum of 38 pounds, 5 times per day, and lifts a counter display with a maximum weight of 11 pounds from floor to counter once per day. A sales representative carries a sales bag weighing a maximum of 20 pounds. Finally, a sales representative moves or assembles floor displays that weigh 75 pounds once a day from the floor to a point of termination on the floor (floor to floor, not floor to ceiling or counter). (AR 482).

Sperandeo's application claimed that his "shoulder, back, neck, head and ear" prevented his return to work, and sought disability benefits. (AR 470). Sperandeo has presented medical evidence relating to a claimed neurological condition and a shoulder injury. The Court reviews each claim in turn.

### 1. *Neurological Condition*

Sperandeo's application states that head and ear injuries (specifically described in the briefs as headaches, disequilibrium, lack of concentration, and memory focus problems) prevent him from returning to work. Sperandeo visited numerous doctors regarding

neurological problems, and received inconsistent medical opinions. The pertinent medical evidence is as follows.

Dr. Glista and Dr. Wolf both conducted neurologic examinations and diagnosed Sperandeo with "post concussive syndrome." Dr. Glista concluded that there was likely no "cognitive damage and reported a normal neurological exam." (AR 472). He indicated that he hoped Sperandeo would make some progress in returning to work. Dr. Wolf did not place any limitations on Sperandeo's return to work. (AR 370)

Dr. Fiducia, a psychologist, found that Sperandeo's "performance on a test of effort and motivation fell within normal limits" and suggested that he should "consider a vocational counselor to facilitate a successful transition back to work." (AR 074). Dr. Fiducia noted that Sperandeo "appear[ed] to believe that he [was] handicapped by his poor health" and that Sperandeo's "high degree of concern and focus on his physical functioning/ somatic symptoms" was concerning because "from an emotional perspective [Sperandeo displayed] some mild depressive symptomatology." (AR 380-81).

In April 2002, Sperandeo's Behind the Wheel Evaluation indicated that he was a good candidate for driving with no restrictions. (AR 0322). In June 2002, an EMG test revealed that his balance was *mildly* abnormal. However, a posturography test displayed inconsistent results, finding that Sperandeo had *severely*

impaired balance. The report noted that the likely cause for this pattern was "aphysiologic," which a technician explained typically indicates the exaggeration of symptoms of dizziness and imbalance.

Dr. Randolph examined Sperandeo in June 2002, and concluded that Sperandeo did not appear to be applying full effort during memory testing. Dr. Randolph reported that the results of a Word Memory Test exhibited an "extreme exaggeration or response bias." He also concluded that on the "current neuropsychological evaluation, Mr. Sperandeo exhibited clear-cut evidence of an attempt to feign or exaggerate cognitive impairment, which invalidates the remainder of the standardized testing done." (AR 456-457).

Finally, Dr. Lewis, Sperandeo's internal medicine doctor for eleven years, submitted a letter to CNA on August 6, 2002. Dr. Lewis stated that based on the evaluations of other doctors, "I feel it is not appropriate for [Sperandeo] to be working in his current occupation, because of the need to think clearly, do heavy lifting and be able to drive a car. I feel that he is unsafe because of dysequilibrium, shoulder and back pain." (AR 145). He also concluded that Sperandeo suffered from "left shoulder pain, lumbar back pain, post traumatic dysequilibrium, and post concussion syndrome." Dr. Lewis did not provide medical evidence (such as test results or charts) to support his letter or indicate

that he had personally conducted a neurological examination of Sperandeo. (AR 124).

After thoroughly reviewing the medical evidence presented by Speradeo, the Court concludes that he is not "disabled" by a neurological-related condition. While providing some evidence that he suffered from post concussive syndrome, the medical evidence does not support the conclusion that it made Sperandeo <u>continuously unable</u> to perform the <u>material</u> and <u>substantial</u> duties of his job. Conversely, several neurologists and the psychologist believed that Sperandeo could return to work, and the driving test demonstrated that Sperandeo was capable of driving without limitation. Dr. Randolph concluded that Sperandeo was exaggerating his symptoms and exerting little effort on his diagnostic tests, which is consistent with the EMG test results. Dr. Lewis' letter was contrary to the driving test results and not supported by the other medical opinions and evidence presented. Thus, Sperandeo does not suffer from a "disability" that continuously limits his ability to perform the substantial and material aspects of job as a sales representative, and is not entitled to benefits on these grounds.

### 2. Shoulder Injury

Sperandeo was originally diagnosed with a shoulder strain immediately following his accident, and he began therapy for his shoulder in early June. (AR 341). In July 2001, Dr. Zoellick, Sperandeo's primary orthopaedist, determined that he had a rotator

cuff tear in his left shoulder. The next month, Sperandeo had left rotator cuff repair surgery and acromioplasty surgery. (AR 214-235). Dr. Zoellick continually monitored Sperandeo's progress. After a July 1, 2002 reexamination, Dr. Zoellick conclusively determined that Sperandeo "has reached maximal medical improvement from his work related injury." Dr. Zoellick placed the following permanent maximum weightlifting restrictions on Sperandeo – lifting a maximum of 35 pounds, 5 pounds overhead lifting, and overhead work as tolerated. *See id.* Dr. Zoellick also concluded that Sperandeo could return to work light duty and discharged Sperandeo from his care. (AR 479). Later, Sperandeo visited Dr. Visotsky, another orthopaedic surgeon, for a second opinion on his shoulder. Sperandeo had a second shoulder surgery on October 10, 2002. (AR 154).

The Court next addresses whether Sperandeo's physical injury and restrictions <u>continuously</u> impaired his ability to perform the <u>substantial</u> and <u>material</u> <u>duties</u> of his job. As noted, material and substantial duties are those "necessary functions . . . which cannot be reasonably omitted or altered." (POL 024). According to the PDA, a sales representative's primary material and substantial duties are driving, walking, sitting, and standing. There is no medical evidence that Sperandeo's shoulder injury impairs his ability to perform these tasks.

The PDA also indicates that a sales representative must lift cases of cigarettes from floor to ceiling 5 times per day. The PDA provides that cigarette cases <u>typically</u> weigh <u>21</u> pounds, with a maximum weight of 38 pounds. Sperandeo is permitted to lift up to 35 pounds. Therefore, he could clearly lift the typical case of cigarettes. The PDA does not suggest how often, if ever, the cigarette cartons actually weigh the maximum of 38 pounds, rather than the usual 21 pounds or some weight between 21 and 35 pounds. Only the absolute heaviest cases would exceed his weight restriction by 3 pounds. Without evidence of how often he is called upon to lift these "heaviest cases," this activity cannot be considered to be a substantial duty. Thus, the objective medical evidence in the record does not demonstrate that Speradeo could not perform this material and substantial task.

A sales representative must also lift a counter display that has a maximum weighs of 11 pounds from floor to counter. This does not involve overhead or lifting or lifting from floor to ceiling. Even at the maximum weight, the counter displays are much lighter than Sperandeo's weight restriction. Therefore, there is no evidence that Sperandeo's shoulder lifting restriction prevented him from performing this material and substantial duty of the job.

Once a day, a sales representative must move a floor display weighing 75 pounds from floor to floor, or assemble it. (AR 482). According to the PDA, this duty does not involve any lifting

whatsoever (it is described as moving from floor to floor, and not to ceiling or counter), but rather potentially pushing or pulling. Sperandeo only has weight restrictions on lifting. Further, even if a sales representative would at some point need to lift a portion of the display to assemble it, there is no evidence to suggest that the piece would weigh more than 35 pounds. Further, because this duty only occurs 1 time per 8-hour day it likewise cannot be said to be a <u>substantial</u> duty. Finally, Sperandeo would not be unable to complete this duty on a <u>continuous</u> basis, even if it were a material and substantial duty.

Accordingly, the Court finds that Sperandeo does not have a physical injury that precludes him from performing the material and substantial duties of his position as a sales representative. Thus, Sperandeo is not "disabled" under the Plan and not entitled to benefits.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 4, 2005

Harry D. Leinenweber, Judge
United States District Court